**STATE of Maine**

v.

**Terry Lee ELWELL and Walter E. Arsenault, Jr.**

Supreme Judicial Court of Maine.

Dec. 9, 1977.

Frank F. Harding, Dist. Atty., Thomas A. Berry (orally), Asst. Dist. Atty., John Bass II, Law Student, Bath, for plaintiff.

Therriault & Golin by Roger S. Golin (orally), Roger Therriault, Bath, for defendants.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

"A defendant is entitled to a fair trial, but not a perfect one." *Lutwak v. Unit-*

*ed States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953).

Because these appellants received a fair trial, albeit an imperfect one, we deny the appeals. Both appellants have appealed from a judgment entered on a verdict of guilty of a violation of 17–A M.R.S.A. § 802 (Arson).

The evidence of guilt produced by the State at trial was overwhelming. Both appellants sought to place responsibility for the fire on a third person. The evidence makes it clear such third person could not have started the fire. A careful reading of the record convinces us beyond a reasonable doubt both appellants are guilty of "arson." The jury verdict of guilty and the imposition of sentence thereon resulted in both appellants being required to pay the penalty for their acts that the law says is their due.

Justice has been done.

As earlier indicated, we are aware appellants' trial cannot be characterized as "a perfect one." However, as we shall hereinafter discuss in detail, the imperfections in our view were not determinative of the result which obtained.

Judge Friendly's question "Is innocence irrelevant?",[1] although made with reference to collateral attacks on criminal judgments, suggests much of the same rationale which underlies the "harmless error" doctrine established by M.R.Crim.P. 52.

Much thought has been given to the "harmless error" rule in its application to so-called "constitutional errors," especially violations of the *Bruton* Rule.[2]

In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that

"before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id* at 24, 87 S.Ct. at 828.

The court continued:

"there are some constitutional rights so basic to a fair trial that their infraction

can never be treated as harmless error . . . ." *Id* at 23, 87 S.Ct. at 828.

But it said that not

"all trial errors which violate the constitution automatically call for reversal." *Id.*

Shortly thereafter the Supreme Court in *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), wrote:

"The mere finding of a violation of the *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Id.* at 430, 92 S.Ct. at 1059.

In the case now before us, despite the violation of the spirit if not the letter of *Bruton*, we find the error was harmless beyond a reasonable doubt.

The jury was justified in believing the following facts: Around 1:30 A.M. on September 3, 1976, a fire broke out in an apartment building in Topsham owned by Mrs. Merton Small. The fire damaged a first floor apartment rented by one Marilyn Reno, who had spent that night elsewhere. The fire was investigated by an inspector from the State Fire Marshall's Office who testified at trial that the absence of any evidence that the fire was of natural or accidental origin led him to believe that arson had been the cause. A police officer later testified that he had observed the appellants taking furniture out of the apartment building and loading it onto a truck shortly before the fire started. A few minutes after appellants left in the truck the officer observed smoke coming out of the building.

The State produced the testimony of Mrs. Small and of the rest of the tenants in the

---

1. Friendly, *Is Innocence Irrelevant?*, 38 U.Chi.L. Rev. 142 (1970).

2. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

building to show the events that led up to the fire. Mrs. Small testified that she had commenced eviction proceedings against Elwell and that a few days before the fire Elwell had told her that the building would be burned.[3] It further developed that on the afternoon and evening before the fire broke out, a party was being held by one of the first floor tenants. Both Elwell and Arsenault, who was not a tenant but who was a friend of Elwell and of some of the other tenants, appeared at the party. Others at the party testified that both Elwell and Arsenault had said at several points in the evening that they intended to burn the building down.

Both appellants took the stand in their own behalf. Basically, they denied burning the building and hinted that another person present at the party was responsible for the fire. Elwell admitted that upon being arrested he had told a police officer that he had not been anywhere near the building after dusk. On the stand Elwell testified that he had been in the building at that time but that he had denied his presence to the officer for fear of being blamed for the fire. On rebuttal, it appeared that the person on whom the appellants tried to place the blame had been asleep when the fire started and had to be awakened by the police.

The first issue raised on appeal concerns jury prejudice. During voir dire, the prospective jurors were asked whether anyone knew the appellant Arsenault. One prospective juror stated, "I know Walter Arsenault. Last year my house was broken into and among other things . . ." The court intervened saying, "Wait a minute, do you know the defendant?" The juror replied, "Yes, among the things that were stolen were . . ." The juror was then dismissed from the panel. Appellants argue that the failure of the court either to dismiss the entire panel or to admonish the jury requires a new trial.

■ The State contends that the appellants have waived their objections to the

jury since, after challenging the entire panel for cause, the appellants indicated their satisfaction with the jury. Appellants also failed to use all their peremptory challenges. We need not decide, however, whether the prior objection was later waived since we find no

> "high potential for ineradicable prejudicial impact upon those who ultimately became jurors as to deny to [appellants] a fundamentally fair trial." *State v. Gordon*, Me., 321 A.2d 352, 368 (1974).

The juror did not accuse the appellant Arsenault of having committed any prior crime. There was no indication that the juror had formed an opinion of the guilt or innocence of the appellant. The court promptly stopped the juror and eliminated any possibility that anything prejudicial might be said.

There was clearly no prejudice to either appellant.

■ Appellants next contend that it was error to admit the expert testimony of the inspector for the Fire Marshall's Office. At oral argument appellants' counsel conceded that the expert was sufficiently qualified. Appellants argue, however, that the matter on which the expert testified was not beyond common knowledge and that any untrained layman could have given an intelligent opinion on the cause of the fire.

We disagree. The inspector had been adequately trained to determine the cause of a fire. He investigated the possibility that the fire could have been started by accidental or natural means. His elimination of those possibilities formed the basis for his opinion that the fire was of incendiary origin.

There was no abuse of discretion in admitting his testimony.

■ The third issue asserted on appeal is, in essence, whether the trial court's failure to sever the proceedings prejudiced the appellants in violation of the rule of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620,

---

3. The actual testimony was that Elwell "said the same thing that has happened to houses in Moodiville (*sic*) are going to happen to this apartment house."

20 L.Ed.2d 476 (1968). Appellants correctly urge that in the case of a joinder the trial justice has a continuing duty to keep a watchful eye over the proceedings and to order a severance when it becomes apparent that the rights of the defendants will be prejudiced. *State v. Cuddy,* Me., 366 A.2d 858 (1976).

 It was ill-advised for the State to move for a joinder in this case,[4] knowing that it would seek to introduce extrajudicial statements of each defendant which might incriminate the other. A careful scrutiny of the record below, however, demonstrates that any violation of *Bruton* was, at most, harmless error.

 *Bruton v. United States, supra,* held that where a confession of one defendant inculpating a codefendant was admitted into evidence, a curative instruction stating that the confession was admissible only against the declarant was insufficient to protect the codefendant. Thus, when the declarant refused to take the stand, the codefendant was denied his constitutional right to confront the witnesses against him. While *Bruton* was concerned with confessions, we do not read that decision as being so limited. *See Schneble v. Florida, supra.* The statements complained of here were statements of intent to commit a crime. The statements, with one exception, were clearly admissible against the declarant under M.R.Evid. 803(3). *See also Mutual Life Insurance Company v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892); *People v. Alcalde,* 24 Cal.2d 177, 148 P.2d 627 (1944); *State v. Cugliata,* Me., 372 A.2d 1019 (1977). While not actual admissions, in the sense that the statements "admitted" prior criminal conduct, the statements are similar to admissions in that they link the appellants to a subsequent crime. If it should appear that these statements incriminated the nondeclarant codefendant and that prejudice arose therefrom, then the "spirit" of *Bruton,* at the very least, will have been violated.

 Upon examination of the record, it is apparent that most of the statements did not even mention the proposed participation of the other defendant. Where a codefendant is not inculpated by the admissions introduced into evidence, it is obvious that *Bruton* has not been violated. *See United States v. Trudo,* 449 F.2d 649 (2d Cir. 1971); *State v. Wing,* Me., 294 A.2d 418 (1972).

Two statements, however, do appear to pose problems. The first statement was introduced through the testimony of the tenant who had had the party in his apartment. The witness stated that a day or so before the fire the appellants had said "that they was gonna let me know— . . . when they were gonna do it." After excusing the jury, the court held a voir dire examination and determined that both appellants were present. The jury was then recalled and the testimony was admitted. The court apparently believed that the fact that both defendants were present meant that the statement was admissible against whoever had made this statement and was admissible as a sort of adoptive admission against the nondeclarant.

 This view of the situation is erroneous. The witness could not remember who had made the statement. There was thus no adequate foundation laid for admitting the statement in the first place. The only possible basis for admitting the statement without a proper foundation was if the statement could be deemed admissible against both appellants. *See United States v. Schroeder,* 433 F.2d 846, 848 (8th Cir. 1970), *cert. denied sub nom., Allen v. United States,* 400 U.S. 1024, 91 S.Ct. 590, 27 L.Ed.2d 636 and 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224. The mere fact of a nondeclarant's presence at the time a statement is made is insufficient in itself, however, to warrant a conclusion that the nondeclarant adopted the statement. The proponent of the statement has the burden of demon-

---

**4.** Separate indictments against codefendants should not be consolidated for trial until the possibility of *Bruton* problems has been thoroughly explored *on the record* and if the possi-

bility exists of such problems arising, the State should be required to take prophylactic steps such as those outlined in detail in *State v. Wing,* Me., 294 A.2d 418 (1972).

strating acquiescence in the statement by the nondeclarant. R. Field and P. Murray, *Maine Evidence* § 801.5 at 194 (1976). The State did not meet that burden here. Since the statement would only have been admissible against the declarant, the statement should not have been admitted without ascertaining who was the declarant.

The second statement that poses problems was introduced through the testimony of one who had been present at the party. The witness stated that Elwell "wanted to get his furniture out before they burnt the place down." While the witness used the words "they" and "he" somewhat interchangeably, we will treat the statement as inculpating the appellant Arsenault. We are faced, therefore, with two statements, one of which was inadmissible as to Arsenault while the other was inadmissible as to both appellants. The statements were both damaging in that they connected both appellants to the subsequent crime. Their admission, however, was harmless error.

The rationale underlying *Bruton v. United States, supra,* is that juries cannot be deemed to have the ability to keep separate a confession admissible against one defendant but inadmissible against the other. The "devastating" risk of confusion is lessened, however, where both defendants have confessed and the confessions interlock.

It may be just as difficult to keep the testimony separate in the case of two confessions as it is in the case of one. There is less constitutional concern, however, over keeping the evidence separate where both confessions are substantially similar and corroborative of each other. It is of continuing importance that each defendant be convicted only upon evidence admissible against him. Where the evidence against each defendant is overwhelming, however, (as where each defendant has confessed) any difficulty the jury might have in separating the testimony is frequently treated as harmless error.[5] *See Mack v. Maggio,* 538 F.2d 1129 (5th Cir. 1976); *United States ex rel. Stanbridge v. Zelker,* 514 F.2d 45 (2d Cir. 1975).

The present case is clearly analogous to the situation where two interlocking confessions are introduced. The statements sought to be introduced against each appellant were substantially similar. Certainly statements of intent cannot "interlock" or support each other in precisely the same fashion as do confessions. Given the similarity of the admissible evidence against each appellant, however, and given the other overwhelming evidence of guilt,[6] any difficulty the jury may have had in keeping the evidence against each appellant separate is harmless error beyond a reasonable doubt. We note further that since only two statements were confusing, that difficulty could not have been great.

One other factor supports the conclusion that, at least as regards appellant Elwell, any *Bruton*-type violation was harmless error. Upon cross-examination by the State, appellant Arsenault denied making any threats to burn the building.

5. Other courts have not stated this rule in precisely this form. Ordinarily, it is held that where each defendant makes a confession that "interlocks" with the confessions of other defendants, the *Bruton* rule does not apply. *See United States ex rel. Ortiz v. Fritz,* 476 F.2d 37 (2d Cir. 1973), *cert. denied* 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482; *United States ex rel. Sloan v. McMann,* 415 F.2d 275 (2d Cir. 1969); *United States ex rel. Catanzaro v. Mancusi,* 404 F.2d 296 (2d Cir. 1968), *cert. denied* 307 U.S. 942 (1970). We agree with the court in *Metropolis v. Turner,* 437 F.2d 207 (10th Cir. 1971), that whether interlocking confessions are exceptions to the *Bruton* rule or, while technical violations of the rule, constitute merely harmless error, is a "legal nicety"

which does not merit consideration. Suffice it to say, when interlocking confessions are admitted, *Bruton* does not require reversal.

6. Aside from the admissible statements of intent, the other evidence of guilt included: the testimony of the inspector that arson was the likely cause of the fire; the testimony of the police officer who had observed the departure of the appellants and who observed smoke in the building a few minutes later; and the testimony, corroborated by a police officer, of the person on whom the appellants tried to lay the blame, that he had been asleep when the fire started and had to be awakened by the police.

"We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments." *Nelson v. O'Neil,* 404 U.S. 622, 629–30, 91 S.Ct. 1723, 1727, 29 L.Ed.2d 222 (1971). *See Wyatt v. Oklahoma,* 385 F.Supp. 562, 567 (W.D.Okl.1974); *United States ex rel. Haynes v. McKendrick,* 350 F.Supp. 990 (S.D.N.Y.1972), aff'd, 2 Cir., 481 F.2d 152.

 Arsenault's denial that he had ever threatened to burn the building combined with the thrust of his testimony, later corroborated by Elwell himself, all tended to exculpate Elwell as well as Arsenault.[7]

Appellants raise one final point in regard to the admission of these statements. They contend that the trial justice failed to instruct adequately the jury to keep the evidence against each appellant separate. At two points during the trial the justice *sua sponte* instructed the jury that the statements just admitted were admissible only against one defendant. He later prefaced his charge by stating that

"they are individual cases and they are to be treated separately to the extent that you must find that the evidence that you have heard over the past day and a half is such that convinces you that each of these defendants is guilty of this crime."

We note that appellants never requested any further instructions and failed to object to the charge. In light of this, we can find reversible error only if appellants can demonstrate that there was manifest error. While the justice below might have been well advised to emphasize this aspect of the case more strongly, the preceding discussion demonstrates that any error was harmless.

The final point on appeal is the sufficiency of the evidence. As we have earlier indicated we find the point to be without merit. Despite the imperfections in the procedures used in the conduct of this trial.

The entry must be:

Appeal denied.

The judgment of the Superior Court is affirmed.

WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ., concur.

McKUSICK, C. J., did not sit.

DELAHANTY, J., sat at oral argument, but participated no further.

---

**7.** We note the presence of one other factor which would ordinarily require that any *Bruton*-type violation be regarded as harmless error. Both appellants chose to testify here. When admissions incriminating a codefendant are admitted, the decision of the declarant to testify allows the codefendant a chance to cross-examine the declarant. There is thus held to be no violation of the right to confrontation. Any *Bruton* violation is harmless *State v. Berube,* Me., 297 A.2d 884, 888 (1972); *State v. Wing,* Me., 294 A.2d 418, 423 (1972). Here, however, appellants were represented by the *same attorney.* No cross-examination of either appellant, other than that undertaken by the State, was attempted or was even possible. Accordingly, we do not use this ground to support our decision.

That the same attorney was appointed to represent both defendants is one of the reasons we attach the label "imperfect" to the conduct of this trial. The same attorney should not be appointed or permitted to represent codefendants unless the court has made inquiry on the record and is satisfied that there is no reasonable probability of conflict of interest arising by reason of such joint representation. Such finding by the appointing justice should also appear on the record. *See United States v. Glasser,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941).