STATE of Maine

v.

Thomas F. LeCLAIR.

Supreme Judicial Court of Maine.

Jan. 18, 1978.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou (orally), Deputy Dist. Atty., Portland, for plaintiff.

Wilson, Steinfeld, Murrell, Barton & Lane by Thomas P. Wilson (orally), Henry Steinfeld, Portland, for defendant.

Before DUFRESNE, C. J., and WERNICK, ARCHIBALD, DELAHANTY * and GODFREY, JJ.

WERNICK, Justice.

Defendant Thomas F. LeClair appeals from a judgment entered in the Superior Court (Cumberland County) on the verdict of a jury finding him guilty of "reckless conduct with use of a dangerous weapon." [1] (17–A M.R.S.A. § 211 and § 1252(4)). [2]

We deny the appeal.

The issues of the appeal involve the following circumstances.

Defendant filed a pre-trial motion for discovery [3] which was granted in part on October 22, 1976. Trial was set for November 16, 1976. At 9:00 a. m. on that day, before the trial started, the prosecuting attorney showed to defense counsel five photographs which the State intended to offer in evidence. The photographs depicted a bullet hole in the wall between defendant's home and the adjacent apartment. Defendant did not move for continuance, and trial began as scheduled.

During trial, one of the State's witnesses, Susan LeClair, testified, without objection, to the accuracy of two of the photographs. Another witness for the State, Officer Coffin (an investigating officer who was present when some of the photographs were taken and who himself took the rest of the photographs) also testified, without objection, to their accuracy. Officer Coffin further testified as to certain measurements made by him in defendant's home and in the adjoining apartment. The measurements determined the height of the bullet hole in each wall, indicating that the bullet traveled in a downward path. During his testimony Officer Coffin, to refresh his memory, referred to notations of the measurements which he had made on the backs of certain of the photographs. Defendant did not object.

However, when the State later offered the photographs as evidence, defendant did object on the ground that the State had violated the court's discovery order. Thereafter, the State withdrew its offer of the photographs. Without specifically so indicating, but apparently for the same reason he had objected to the admissibility of the photographs, defendant then asked that Officer Coffin's testimony regarding the measurements be stricken. The request was denied. Defendant also moved for a mistrial but subsequently withdrew the motion.

Following cross-examination of Officer Coffin, defendant renewed the motion to

---

* DELAHANTY, J., sat at argument and conference but did not otherwise participate.

1. The evidence showed that following an argument with his wife Susan, defendant pointed a rifle at her and fired, narrowly missing her head. The bullet passed through the wall of defendant's apartment and came to rest in the adjoining apartment.

2. Defendant was acquitted of a charge of "criminal threatening with use of a dangerous weapon", (17–A M.R.S.A. § 209 and § 1252(4)).

3. The relevant portion of the motion says:

"Accordingly, the Defendant requests that the following items be made available to him and/or his counsel for inspection and that copies of photographs and other documents capable of being copied be furnished to the Defendant or to his counsel.

    \*    \*    \*    \*    \*    \*

"4. The production or inspection by the Defendant's counsel of any and all tangible evidence concerning this case whether or not it is intended to be offered into evidence by the State including but not limited to weapons of any type, and all other tangible evidence connected with this case."

strike the testimony as to the measurements. The motion was again denied.

Having rested at the close of the prosecution's evidence, defendant moved for judgment of acquittal, asserting that the State's failure to comply with the court's order for discovery denied defendant a fair trial in violation of his constitutional right to due process of law. The motion was denied.

We discuss, first, whether the judgment of conviction must be reversed because the jury was permitted to consider Officer Coffin's testimony about the measurements.

The record shows that Officer Coffin used the notes in no way other than as a means to refresh his present recollection. No objections were made to the manner in which he testified, and there is no indication that, lacking actual recollection, the officer merely read the content of his notes into the record. The trial transcript shows the following testimony of Officer Coffin:

"Q  How far off the floor was the hole in the apartment next to LeClair's apartment as you have described it near the couch?

"A  I'll have to look to recollect. (witness reads paper)

"Q  I assume you made the measurements yourself in the course of your investigation?

"A  Yes, sir.

"Q  Did you make them on that same night, the 26th of September when you went over there about 6:30?

"A  No, when I took the pictures the following morning. The bullet hole in the adjoining apartment from the floor was two feet one inch to the center."

The record also shows that between the refreshing of his recollection and disclosure of the measurements, the witness answered other questions in a manner indicating that he was able to testify to the figures without further reference to his notes.

■ Whether the notes were used properly in refreshing the witness' memory is a question of fact. The trial judge stated that he had no doubt that the witness was testifying properly.[4] In view of the judge's ability to observe the witness while he testified, we must conclude on appeal that the notes were in fact used correctly. By having produced before trial for defendant's examination the photographs which contained Officer Coffin's notes on the back, the State acted in compliance with the production requirements of Rule 612, M.R. Evid., as here pertinent.[5] The witness' testimony of his recollection, in contradistinction to the contents of the notes on the back of the photographs, was properly admissible evidence.

Defendant contends, nevertheless, that because the State had failed to make the photographs earlier available in compliance with the order of discovery the State violated defendant's constitutional rights to due process of law by depriving him of reasonable opportunity to be prepared for trial and thus, in effect, rendering his trial unfair. Defendant's reasoning is that had the photographs been disclosed to him earlier, he would necessarily have had access to Officer Coffin's notes written on the backs of the pictures and thus would have had more time to be better prepared for Officer Cof-

---

4.  At a sidebar conference regarding the photographs, the following took place:
    "MR. BERRY: Well, this young man, the police officer who is now testifying, has testified to his measurements *through his testimony.* (emphasis supplied)
    "THE COURT: No question about that."

5.  The relevant portions of Rule 612 are:
    "(a) . . . If, while testifying, a witness uses a writing or object to refresh his memory, an adverse party is entitled to have the writing or object produced at the trial . . . in which the witness is testifying.
    
    *    *    *    *    *    *
    
    "(c) A party entitled to have a writing or object produced under this rule is entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If production of the writing or object at the trial . . . is impracticable, the court may order it made available for inspection."

fin's testimony regarding the measurements.[6]

■ Defendant correctly claims that the photographs were discoverable pursuant to the discovery order, but defendant has failed to show that the State's non-compliance with the order caused prejudice to defendant sufficient to deprive him of a fair trial. Cf. *State v. Sherburne*, Me., 366 A.2d 1127, 1131 (1976).

■ The "basic purposes" of Rule 16 M.R.Crim.P.,[7] governing discovery, are stated in Glassman, *Maine Practice*, § 16.2, at 136 to be:

> ". . . to eliminate concealment and surprise and to remedy the imbalance in the means of securing evidence."

See also *State v. Buzynski*, Me., 330 A.2d 422, 429 (1974). Defendant had full access to the bullet hole; it was in his own apartment. Defendant was aware that the police had inspected the hole; he himself had pointed it out to the investigating officer. Defendant had ample time to make his own measurements even after Officer Coffin testified, since trial continued on the next day. Defendant does not claim, neither is there evidence of, bad faith on the part of the State, and as soon as feasible after the prosecutor himself learned of the existence of the photographs, he showed them to defendant.

The entry is:

*Appeal denied.*

*Judgment affirmed.*

POMEROY, J., did not sit.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

---

6. As we have discussed above, production of the notes themselves was timely.

7. Rule 16 M.R.Crim.P., in pertinent part states:

    "*(a) Discovery and Inspection.* Upon timely motion of a defendant and upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable, the court shall order the

prosecuting attorney to permit the defendant to inspect and copy or photograph designated books, papers, documents, or tangible objects which are within the possession, custody, or control of the state, including written or recorded statements or confessions made by the defendant . . ., written or recorded statements of witnesses, . . . .."