STATE of Maine

v.

Robert LOVELL.

Supreme Judicial Court of Maine.

Sept. 6, 1978.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou (orally), Deputy Dist. Atty., Portland, for plaintiff.

Bernstein, Shur, Sawyer & Nelson by Peter J. Rubin (orally), Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

At a jury-waived trial held on April 20, 1977, in the Superior Court (Cumberland County) defendant Robert Lovell was adjudicated guilty, as charged by indictment, of attempted burglary in violation of 17–A M.R.S.A. §§ 152(1), 401(2)(B).

Defendant has appealed from the judgment of conviction. We deny the appeal.

On October 22, 1976, Mrs. Connie LaBrecque was in her home in Windham, Maine, when two men approached her house in an automobile. The automobile came to a stop and the two men emerged from it. One remained near the vehicle; the other approached the house and rang the door bell on each of two doors. When no one answered, the man began to pry at a door. Because Mrs. LaBrecque did not recognize the men, she had in the meantime taken the precaution to obtain a gun. When the man began prying the door, she pushed the door open and confronted the man, pointing the gun at him. He immediately ran to the automobile and drove away with the other man.

Subsequently, at a photograph display conducted by the Windham Police Depart-

ment, Mrs. LaBrecque identified a photograph of defendant as a photograph of the man who had been the passenger in the automobile involved in the incident at her house and who had acted as "look out" during the incident.

At trial, Mrs. LaBrecque unhesitatingly identified defendant as one who had participated in the events which occurred at her house on October 22, 1976.

Defendant claims on appeal that, regardless of whether there may have been evidence sufficient to support the conviction of defendant for attempted burglary, the conviction must be reversed because the presiding Justice reached his conclusion that defendant was guilty as charged by resorting to, and relying upon, matters which had not been admitted in evidence.

Defendant's contention is directed to the following circumstances. Connie LaBrecque testified that the vehicle used by defendant and his companion at the time of the attempted burglary was a big, old car with a five digit license plate number. She said that soon after she observed the license plate number she wrote it down on a piece of paper. However, she did not have the paper with her at the trial and she was unable to testify as to the number from memory. Subsequently, Officer David Guitard of the Windham Police Department was called to testify. He stated that on the day of the alleged crime Mrs. LaBrecque "supplied" him the license plate number of an automobile. Defendant made objection to the further pursuit of this line of testimony on the ground that it would involve hearsay. Officer Guitard was permitted to state the license number within the evidentiary framework that it was being

"offered not to prove the truth of what she [Mrs. LaBrecque] told Officer Guitard

but merely what she did tell him."[1] (emphasis supplied)

Office Guitard then testified that he "believe[d] possibly the first two digits . . . were 28 and possibly 550 or something like that."

Later in the trial defendant himself testified that at the time of the alleged crime he owned an automobile and its registration plate number was 28–550.

At the conclusion of the trial, the prosecuting attorney waived oral argument but defense counsel made a "brief closing statement" which was not included in the record before us. Before announcing his ultimate conclusions adjudicating defendant guilty as charged, the presiding Justice, as though responding to defense counsel's argument, made an oral statement descriptive of his reasoning,[2] namely:

"Well, Mr. [Defense Counsel], I find the evidence in this case contrary to what you say or suggest, somewhat persuasive. The photographs, the fact that several of the photographs do tend to resemble Mr. Lovell, in my judgment, number one, demonstrates the fairness of the exhibition of the photographs to Mrs. LaBrecque and only strengthens the identification which she made. *Coupled with her identification of an automobile which is owned by, according to his own testimony, owned by Mr. Lovell or at least, was owned at the time of the particular offense so that we have, I think, beyond dispute, evidence that Mr. Lowell's car was at Mrs. LaBrecque's home on that date* and we have Mrs. LaBrecque's identification both in court and by photographs of Mr. Lovell as one of the occupants of that motor vehicle under circumstances under which she had a rather substantial period of time to observe him, to see whether Mrs. LaBrecque could make a photographic identification of the men who were at her house.

---

1. Apparently, the presiding Justice conceived the license plate number, as admitted in evidence for this limited purpose, to have the following relevance. That Connie LaBrecque had mentioned the license plate number to Officer Guitard was a step in the prosecution's undertaking to show how it happened that Connie LaBrecque was shown a photograph of the defendant as part of the police undertaking

2. We do not know if defense counsel commented on the police officer's testimony, nor do we know if, in argument, a request was made for special findings.

adequate lighting conditions, at a distance of apparently no greater than 25 to 30 feet. The identification, unlike the identification testimony which is frequently offered in court, is, in my judgment, most persuasive. On the other hand, the kind of alibi testimony that was tended by Mr. Marcoux is the kind of testimony which this court does not find particularly persuasive. The ability even several weeks after a particular date to reconstruct the events of that date and testify with any degree of clarity as to what happened on that particular date at particular hours, in my judgment, are most unreliable forms of testimony unless there is something particular that would direct the individual's attention to those particular events and therefore, while I'm not doubting the truthfulness of Mr. Marcoux, I have some question as to the accuracy of his recollection, sufficient question that I cannot say that the alibi testimony or that Mr. Lovell's testimony is such as to raise a reasonable doubt in my mind as to Mr. Lovell's participation in the events with which he is here charged. As I have already previously indicated to you, I think the evidence is sufficient to permit a trier of fact to find not only that there was an attempt to illegally enter the dwelling house, but that the attempt was made with specific purpose and intent of committing therein, the crime of theft and under these circumstances, I have no choice but to find the defendant, Robert Lovell, guilty of the offense of attempted burglary and I so find." (emphasis supplied)

Defendant contends that the emphasized portion of the Justice's analysis shows that he violated his own evidentiary ruling that the license number stated by Officer Guitard in his testimony was not to be treated as evidence of the truth of what Connie LaBrecque had seen as the license plate number on the automobile involved in the incident at her house. Since there was no evidence other than the license plate number stated by Officer Guitard in his testimony to place defendant's automobile at Connie LaBrecque's house, the statement of the presiding Justice that Connie LaBrecque had *identified* the automobile at her house as the automobile which defendant admitted owning plainly reveals, says defendant, that the Justice treated Officer Guitard's statement of the license plate number *as substantive proof* that this was the number seen by Connie LaBrecque on the registration plate of the automobile involved in the events at her house. Thus, argues defendant, it was only by resorting to inadmissible evidence that the presiding Justice was able to reason that "beyond dispute" defendant's car was at Connie LaBrecque's home on the date of the crime charged against defendant.

The record shows that defendant did not at any time object and point out to the presiding Justice that he had committed the error of which defendant now complains on appeal. We therefore face a threshold question whether this omission by defendant constitutes a procedural default precluding appellate cognizance in ordinary course of the error which defendant now asserts as a point of appeal.

■ If a defendant fails to make timely and proper objection to a ruling made by the presiding Justice during the presentation of evidence or to an instruction which the presiding Justice gives to the jury, an appellate claim of error in such ruling or instruction will be addressed only in an "obvious error" context, i. e., to evaluate whether the error, if any, caused defendant an unfair trial. *State v. Pomerleau*, Me., 363 A.2d 692 (1976). Here, however, the error alleged relates to pronouncements of the presiding Justice, as the fact-finder in a jury-waived trial, designed to reveal the reasoning by which he arrived at his ultimate adjudication finding defendant guilty as charged.

We have recently held that the erroneous use of a statement as an "adoptive admission against the nondeclarant" was error which became harmless where the evidence of guilt was "overwhelming." *State v. Elwell*, Me., 380 A.2d 1016, 1021 (1977).

The Justice below heard the testimony of the victim of the attempted burglary as he did that of the alibi witnesses. He listened to and observed Mrs. LaBrecque as she described her many opportunities to observe this defendant in her dooryard over a substantial period of time. She saw him sitting in an automobile, standing in her driveway, and walking about. She could see his profile as well as his full facial appearance. She described his mannerisms as he was "looking up and down the road and looking over to the guy knocking on the door." Her testimony depicted him as "a big guy, he was quite a bit taller than the other guy and he was heavy set and he had blondish, sandy-colored hair," and as wearing a brown leather jacket.

The Justice below also had the advantage of hearing her describe what must be conceded to be a very fair and proper photographic lineup during which she unhesitatingly selected the photograph of the defendant, testifying: "As they [the photographs] were laid out, I said, that's him." Finally, the Justice observed her positive and unshaken in-court identification of the defendant.

Likewise, the Justice heard the alibi evidence in which the appellant's friend, Mr. Marcoux, testified that the defendant was with him in South Portland at the time the alleged crime was being committed, although the witness was unable to associate that particular day with any specific thing or event.[3]

The defendant argues that the Justice below "clearly and materially relied on [the] erroneous assumption that it has been established that Mr. Lovell's car was at the scene," and he might well have decided otherwise absent such assumption. We cannot agree with that analysis. The statement makes clear that the Justice, with complete support in the record, found that Mrs. LaBrecque's identification of the defendant was "most persuasive." As opposed to this, he found that the alibi evidence was "not . . . particularly persuasive," and characterized it as a most "unreliable" form of testimony.

██ The record establishes beyond doubt that the fundamental reason for finding the defendant guilty was the overwhelming strength of the identification testimony and, therefore, the inadvertent comment which the defendant has seized upon to reverse this conviction was harmless error. *State v. Elwell, supra.*

The entry is:

Appeal denied.

Judgment affirmed.

---

**3.** Some two weeks after the commission of the crime and after the defendant had been arrested, Mr. Marcoux was asked by the defendant to recall that on the day of the crime they spent the afternoon in South Portland.