2001 ME 14

**STATE of Maine**

v.

**Timothy PIERCE**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 21, 2000.

Decided: Jan. 24, 2001.

David W. Crook, District Attorney, Alan Kelley, Deputy District Attorney, Augusta, for State.

Walter F. McKee, Esq., Lipman & Katz, P.A., Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

DANA, J.

[¶ 1] Timothy Pierce appeals from a judgment of conviction entered after a jury trial in the Superior Court (Kennebec County, *Atwood, J.*). Pierce was convicted of: two counts of gross sexual assault (Class A), 17–A M.R.S.A. § 253 (Supp. 2000); three counts of unlawful sexual contact (Class C), 17–A M.R.S.A. § 255 (Supp. 2000); three counts of aggravated trafficking or furnishing of scheduled drugs (Class C), 17–A M.R.S.A. § 1105 (Supp.2000); and seven counts of procuring or furnishing liquor for minors (Class D), 28–A M.R.S.A. § 2081 (1988 & Supp.2000).[1] On appeal, Pierce challenges the Superior Court's decision not to separate the of-

---

1. Pierce was indicted on the following 19 counts:

Count 1—gross sexual assault of Victim A;
Count 2—unlawful sexual contact of Victim A;
Count 3—aggravated trafficking or furnishing of scheduled drugs to Victim A;
Count 4—unlawful sexual contact of Victim B;
Count 5—aggravated trafficking or furnishing of scheduled drugs to Victim C;
Count 6—procuring or furnishing liquor for a minor, Victim C;
Count 7—aggravated trafficking or furnishing of scheduled drugs to Victim D;
Count 8—procuring or furnishing liquor for a minor, Victim D;
Count 9—aggravated trafficking or furnishing of scheduled drugs to Victim E;
Count 10—procuring or furnishing liquor for a minor, Victim E;
Count 11—gross sexual assault of Victim E;
Count 12—unlawful sexual contact of Victim E;
Count 13—aggravated trafficking or furnishing of scheduled drugs to Victim F;
Count 14—procuring or furnishing liquor for a minor, Victim F;
Count 15—procuring or furnishing liquor for a minor, Victim G;
Count 16—procuring or furnishing liquor for a minor, Victim H;
Count 17—procuring or furnishing liquor for a minor, Victim I;
Count 18—procuring or furnishing liquor for a minor, Victim J; and
Count 19—possession of firearms by a felon (Class C), 15 M.R.S.A. § 393 (1980 & Supp. 2000).

fenses, to deny his motion to acquit on a single count, and to admit prejudicial testimonial evidence. We affirm.

## I. FACTS AND PROCEDURE

[¶ 2] The events occurred between the summer of 1996 and March 1997, but the exact sequence is unclear. Sean Estabrook was fourteen or fifteen years old when he and Pierce became acquainted and began to spend considerable time together. Sean knew that Pierce was married with one child and was a car salesman. Pierce did not divulge his true age to Sean, which was twenty-nine or thirty, but Sean knew that Pierce was older than nineteen. Pierce eventually and repeatedly asked whether Sean knew any girls that Pierce could, in Sean's words, "get with" or "hook up with." Pierce told Sean that he liked girls who were "younger," "not overweight," with "long hair," and "small waist[s]."

### A. Counts 15–18—Island Party

[¶ 3] At the end of the summer of 1996, Pierce wanted to have a party, and Sean arranged for five girls to attend. Sean testified that Pierce instructed him to tell the girls that Pierce's name was Ryan and that he was nineteen years old. Sean arranged for the girls to be picked up, and everybody rode in Pierce's boat to an island. At the island, Pierce provided beer and hard liquor, and the girls became intoxicated. Sean also indicated that some of the girls removed some of their clothing.

### B. Counts 6, 13, 14—Van Incident

[¶ 4] Sean testified that Pierce drove a van full of Sean's friends to a cabin. Either outside the cabin or in the van, some of girls drank the beer that was in Pierce's vehicle and smoked marijuana that Pierce had in his possession. One girl testified that Pierce and Sean had told her that

Pierce's name was Ryan and that he was nineteen years old.

### C. Counts 5–8—Roller Rink Incident

[¶ 5] Sean testified that either he or Pierce asked a girl if she had a friend who "would like to come and party." The girl testified that she believed Pierce was a nineteen year old named Ryan. Pierce and his friends arrived at Sean's house in two separate vehicles, and the girl saw beer being "transported from [Pierce's vehicle] to [his friend's] car." They drove to a roller rink to pick up the girl's friend, and after stopping at the roller rink, Sean and Pierce were in one vehicle, and both girls and Pierce's friends were in the other vehicle. The girls both consumed beer while in the car with Pierce's friends. Once they arrived at a cabin, Sean testified that he remembered that there was a conversation between Pierce and the girls about dancing and money, and the girls were "dancing on tables and getting sexual." The girls discussed their wishes to run away from their homes. Pierce said that "he was connected with the mob" and "he did drug runs," and if they would strip for him, he would buy them plane tickets, find them jobs as strippers in Florida, and give them money.

### D. Counts 9–12

[¶ 6] Sean testified that a girl was having troubles at home and needed a place to stay. Sean contacted Pierce, and Pierce drove Sean and the girl to a cabin. At the cabin, Pierce, Sean, and the girl "smoked marijuana, and after that, [Pierce] and [the girl] got involved in sexual relations." In addition, the girl stated that Sean introduced Pierce as Ryan, and at the cabin, Pierce forced her to have sex.

### E. Count 4

[¶ 7] Sean testified that he and Pierce went to a house to meet two girls. Sean

identified Pierce as a nineteen year old named either Jeff or Ryan. While at the house, Sean saw a girl perform oral sex on Pierce. The girl testified that while Pierce was at the house, he felt her chest, attempted to put his hand down the front of her pants, tried to kiss her, threw her down on the couch and got on top of her, and "[h]e unzipped his pants and told me to jerk him off."

## F. Counts 1–3

[¶ 8] Sean testified that he arranged for him and Pierce to pick up a girl who needed a place to stay because she was having problems at home. Pierce identified himself as Jeff and said he was nineteen years old. While in the vehicle, her shirt was removed, and Pierce touched her breasts and body. She asked Pierce for a cigarette and he said, first, she "would have to jerk him off." After doing as Pierce asked, he then demanded oral sex. Next, Pierce produced marijuana, which all three passengers smoked. After the incident, the girl informed the police. Sean was contacted and Pierce fabricated a story for Sean to tell the police, but Sean eventually disclosed the truth.

[¶ 9] Pierce was indicted on nineteen counts, pleaded not guilty, and filed a motion for separate trials pursuant to M.R.Crim. P. 8(a) and (d).[2] After a hearing, the court severed the charge for possession of firearms by a felon (Count 19) and held that Counts 1–18 could be joined because "as it appears from representations by counsel ... the factual allegations in each of these counts are connected to each other, suggesting a common scheme or plan."

[¶ 10] Prior to trial, the State withdrew Count 10 of the indictment; thus, the case went to trial on Counts 1–9 and 11–18. During the trial, Pierce renewed his motion for separate trials and made numerous motions for a mistrial based on prejudicial joinder, but the court denied the motions. At the close of the State's case, Pierce again moved for a mistrial and made a motion to acquit on all counts. The court granted the motion for acquittal on Count 7. The jury found Pierce guilty of Counts 1–4, 6, 8–9, 11–18 and not guilty of Count 5. Pierce was sentenced[3] and filed a timely appeal pursuant to M.R.Crim. P. 37.

---

2. Pierce requested separate trials on Counts 1 through 3, Count 4, Counts 5 and 6, Counts 7 and 8, Counts 9 through 12, Counts 13 and 14, Counts 15 through 18, and Count 19.

3. Pierce was sentenced to the following terms of imprisonment:
   Count 1—17 years served concurrently with Counts 2 and 3 but consecutive to Count 4;
   Count 2—4 years served concurrently with Counts 1 and 3 but consecutive to Count 4;
   Count 3—2½ years served concurrently with Counts 1 and 2 but consecutive to Count 4;
   Count 4—4 years served consecutive to Counts 9, 11 and 12;
   Counts 6 and 8—364 days served concurrently with each other but consecutive to Counts 15, 16, 17 and 18;
   Count 9—2½ years served concurrently with Counts 11 and 12 but consecutive to Counts 13 and 14;
   Count 11—20 years served concurrently with Counts 9 and 12 but consecutive to Counts 13 and 14;
   Count 12—4 years served concurrently with Counts 9 and 11 but consecutive to Counts 13 and 14;
   Count 13—2 years served concurrently with Count 14 but consecutive to Counts 6 and 8;
   Count 14—364 days served concurrently with Count 13 but consecutive to Counts 6 and 8;
   Count 15—364 days served concurrently with Counts 16, 17 and 18;
   Count 16—364 days served concurrently with Counts 15, 17 and 18;
   Count 17—364 days served concurrently with Counts 15, 16 and 18;
   Count 18—364 days served concurrently with Counts 15, 16 and 17.

## II. JOINDER

[¶ 11] Pierce contends that the court erred by not separating the offenses. First, he contends that the offenses should not have been joined because they involved different incidents, times and evidence, and at trial, the State did not prove the purported "common scheme or plan." Second, Pierce contends that the court erred in denying his motion for separate trials because the resulting prejudice from the joinder outweighs the policy favoring trials of more than one offense. Third, he contends that the court erred in denying his motions for a mistrial due to the prejudicial joinder.

[¶ 12] A trial court is authorized to order joinder and severance. *State v. Rich,* 395 A.2d 1123, 1128 (Me.1978). "The court has wide discretion in deciding such matters, and its decision is not grounds for new trial unless prejudice and abuse of discretion are shown." *Id.* (citation omitted). "The denial of a defendant's severance motion pursuant to Rule 8(d) is reviewed for an abuse of discretion, and we will not vacate a decision to deny the motion 'unless the case is one in which the potential for confusion or prejudice is obviously serious.'" *State v. Brown,* 1998 ME 129, ¶ 6, 712 A.2d 513, 516 (quoting *State v. Doody,* 434 A.2d 523, 527 (Me.1981)).

[¶ 13] The joinder of multiple offenses in a single indictment for trial is authorized in certain circumstances by M.R.Crim. P. 8(a), which provides in pertinent part:

(a) **Joinder of Offenses.** Two or more offenses should be charged in the same indictment ... in a separate count for each offense if the offenses charged, whether of the same class or different classes, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions which are connected or which constitute parts of a common scheme or plan.

We have interpreted Rule 8(a) broadly, stating: "If the offenses charged are connected in any reasonable manner, they are properly joinable." *State v. Pierce,* 474 A.2d 182, 184 (Me.1984) (citations omitted).

[¶ 14] The "common scheme or plan" presented by the State during the hearing on the motion to sever the counts was the following: Sean introduced Pierce, under false name and age, to young girls; Pierce provided drugs and alcohol for the girls; and Pierce requested sexual favors from the girls. Pierce grouped the counts into six incidents and contends that the State's "common scheme or plan" is not present in four of the incidents.

[¶ 15] In Counts 15–18, and likewise, in Counts 6, 13 and 14, Pierce contends that the "common scheme or plan" fails because there was no evidence that Pierce engaged in sexual conduct with any girl. In Counts 1–3, Pierce contends that the "common scheme or plan" was missing because the marijuana was smoked after the sexual conduct; therefore, marijuana was "not used in any way to ply [the girl]." In Count 4, Pierce contends that the "common scheme or plan" did not exist because there were no drugs or liquor.

[¶ 16] That all the parts of the State's "common scheme or plan" were not present in every incident does not mean that the "common scheme or plan" did not exist. The eighteen counts that the court determined were properly joined involved six incidents and ten girls. In each incident Sean introduced the girls to Pierce, and Pierce used a false identity. In three of the incidents, three different girls were victims of specific sexual crimes. In two of those three incidents, drugs were involved. In a fourth incident, liquor was involved and Pierce propositioned the girls to strip dance for money. In a fifth inci-

dent, there was liquor and some of the girls' clothing was removed. In a sixth incident, liquor and drugs were present, and one of the girls in this incident was propositioned during a different incident. The events were connected "in time, purpose, and *modus operandi*," *State v. Bradley*, 414 A.2d 1236, 1238 (Me.1980); therefore, the eighteen counts were properly joined pursuant to the minimum requirements established for joinder in M.R.Crim. P. 8(a), *see Pierce*, 474 A.2d at 184.

[¶ 17] Even where joinder is otherwise proper, M.R.Crim. P. 8(d) authorizes the motion justice to order separate trials of offenses if it appears that the defendant is prejudiced by an otherwise appropriate joinder of offenses. Joinder can create a risk of undue prejudice to the defendant by causing the jury to infer a criminal propensity, or to improperly cumulate the evidence and confuse the issues. *Brown*, 1998 ME 129, ¶¶ 7, 9, 712 A.2d at 516; *Pierce*, 474 A.2d at 184. Therefore, we must "balance the policy favoring trials of more than one offense against the potential prejudice to the defendant that may result." *State v. Fournier*, 554 A.2d 1184, 1186–87 & n. 4 (Me.1989) (stating that "[j]oining offenses in a single trial conserves judicial resources, avoids duplicative trials and provides the defendant with a more prompt resolution of the charges") (citations omitted).

[¶ 18] Pierce did not make any specific showing that the risk of prejudice was enlarged by the joinder of the offenses. *See, e.g., Brown*, 1998 ME 129, ¶ 8, 712 A.2d at 516 (finding that the number of the offenses charged "alone is not dispositive of the joinder issue"); *State v. Littlefield*, 389 A.2d 16, 19 (Me.1978) (holding that "a general assertion that it would be impossible for the jurors to avoid cumulating the evidence.... is not a persuasive showing of abuse of discretion"). In addition, to the extent that the multiple charges suggested that Pierce's actions were a recurring *modus operandi* or a "common scheme or plan," evidence of all or many of his offenses could have been admitted even at separate trials pursuant to M.R. Evid. 404(b).[4] *See* M.R. Evid. 404(b) advisers' note; *Brown*, 1998 ME 129, ¶ 9, 712 A.2d at 516. Therefore, the joinder was no more prejudicial to Pierce than if the court had granted separate trials for each offense. *See Littlefield*, 389 A.2d at 19.

[¶ 19] Furthermore, to reduce the risk that the jury might improperly cumulate the evidence, the court instructed the jury that the evidence relevant to each distinct offense must be considered separately. The court stated:

[A]s I told you when we started this trial, it's very important for you to deliberate on and consider each of these charges separately. You must not permit yourselves individually or as a group

---

4. "(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." M.R. Evid. 404(b). This rule of exclusion aims to avoid the danger that the jury will convict the defendant on the basis of evidence of uncharged acts rather than on the evidence of the crime for which he is charged. Evidence, however, that is otherwise competent and relevant to prove a defendant's guilt of a particular crime charged is not inadmissible solely because it also shows defendant guilty of another distinct crime. In this context the foundational test for admissibility is relevance. Evidence revealing other crimes is relevant if it casts light upon the nature of the act for which the defendant is being prosecuted, by showing motive, intent, knowledge, absence of mistake, common scheme, identity or a system or general pattern.
*State v. Wallace*, 431 A.2d 613, 615–16 (Me. 1981) (citations omitted).

to assume or to infer that the defendant is guilty of one or more of these charges because you believe he is guilty of one other or some other of them. Moreover, you must not infer guilt because of the number of charges. The defendant is entitled to the presumption of innocence on each of these charges and may not be convicted on any one of them unless you are satisfied beyond a reasonable doubt that the State has proven that particular charge. Accordingly, you may find the defendant guilty of all the charges, of some of them, or of none of them.

[¶ 20] Although we have established that the rules for severance "should be liberally construed to avoid the potential for prejudice," we find that the court did not exceed the bounds of its discretion by denying Pierce's motion to sever the offenses. *Pierce*, 474 A.2d at 184.

[¶ 21] Pierce also contends that the court erred in denying his motions for a mistrial because the State did not establish a "common scheme or plan" to justify joinder of the offenses. "If the prejudice resulting from joinder becomes manifest during trial and, in the view of the court, such prejudice cannot be cured by appropriate instructions, the presiding justice may grant a motion for a mistrial." *Id.* at 185 (citation omitted). "A motion for a mistrial is addressed to the sound discretion of the trial court, and we review a denial of the motion only for an abuse of that discretion." *State v. Mason*, 528 A.2d 1259, 1260 (Me.1987) (citations omitted).

[¶ 22] The evidence, as presented above, supports the finding that Pierce's "common scheme or plan" existed in whole or in part in the offenses charged. Furthermore, as we decided above, Pierce has

failed to establish prejudice. As a result, the court did not abuse its discretion by denying the mistrial.

## III. ACQUITTAL

[¶ 23] Pierce contends that we should vacate his conviction on Count 8, procuring or furnishing liquor for one of the girls, because there were no facts to support the elements of the crime charged; therefore, the jury relied on "pure speculation" for the conviction. Count 8 alleges, in violation of 28–A M.R.S.A. § 2081,[5] that:

[I]n Kennebec County, State of Maine, Timothy D. Pierce did knowingly procure, or in any way aid or assist in procuring, furnish, give, sell or deliver intoxicating liquor, to wit, beer and coffee brandy, for [a girl], age 15, the said [girl] being a minor not legally able to purchase liquor for herself.

At the close of the State's case, Pierce moved for acquittal on all counts, emphasizing Counts 5–8. The court granted acquittal on Count 7, which alleged that Pierce furnished the girl with a scheduled drug. With respect to Count 8, the court denied the acquittal, but stated:

[T]he evidence, frankly, is somewhat slim on Count 8, but because the standard is to take the evidence in the light most favorable to the State, it is possible that the circumstantial evidence here might convince a jury that the beer that [the girl] took a sip of in the car originated with the defendant, because the testimony in this case suggests that the Bronco was a car that was commonly used by the defendant; the beer came from there; he, on other occasions, has transported beer in that Bronco and dis-

---

5. 28–A M.R.S.A. § 2081 states in pertinent part:

 1. **Offense.** Except as provided in subsection 2, no person may knowingly:

 A. Procure, or in any way aid or assist in procuring, furnish, give, sell or deliver liquor for or to a minor; . . . .

tributed it to kids; that on this occasion, because ... it could be inferred that the beer was transported from the Bronco into the car these two men were in, that it was the same beer. So, even though the evidence as to that count is thin, I'm going to let it go to the jury.

[¶ 24] "When the improper denial of a motion to acquit is alleged, the question before us is whether there was legally sufficient evidence to support the guilty verdict." *State v. Fox,* 494 A.2d 177, 179 (Me.1985) (citations omitted). "The test of legal sufficiency is whether on the evidence as a whole, assessed most favorably to the state, no trier of fact could rationally find proof of guilt beyond a reasonable doubt." *Id.* (citations omitted).

[¶ 25] From the evidence provided by the State, the trier of fact could rationally find proof, beyond a reasonable doubt, that Pierce did knowingly "[p]rocure, ... aid or assist in procuring, furnish, give, sell or deliver liquor" to the girl. 28–A M.R.S.A. § 2081. The State provided evidence that Pierce wanted to "party" with one of the girls, that liquor was "transported" from Pierce's vehicle to the vehicle in which the two girls were passengers, and that the girl was given a beer while she was in that vehicle. Thus, the evidence was sufficient for the jury to find Pierce guilty beyond a reasonable doubt of violating 28–A M.R.S.A. § 2081 by procuring or furnishing liquor for the girl.

## IV. TESTIMONIAL EVIDENCE

■ [¶ 26] Pierce contends that the court erred by allowing one of the girls to testify about a statement in which he connected himself with the mob. Pierce con-

tends that the minimal relevance of the statement is greatly outweighed by the "severe prejudice that [he] would be tied to a criminal enterprise that had nothing to do with this case," and he should be acquitted on Counts 6 and 8. The State contends that Pierce failed to establish that unfair prejudice resulted from the girl's testimony, and the statements were offered as proof of the defendant's motivation and *modus operandi.*

[¶ 27] Pierce objected to the testimony at trial, and the court overruled the objection, stating:

It seems to me that the probative value ... is that it shows purposeful conduct as part of the whole transaction that evening ... and that the ... purposeful conduct was to give them the alcohol and/or drugs to take advantage of them in one fashion or another, and that the oral representations that he was a powerful person and had money and could do things for them was all part of that transaction. So, the court believes that the relevance of that outweighs the potential prejudice, particularly where it seems ... that a fair inference can be drawn that this was puffery as opposed to Mr. Pierce being, in fact, a member of the mafia and somebody who could, in fact, do this, which, as I understand, the State is not claiming ....

■ [¶ 28] A trial court's determination to admit evidence pursuant to M.R. Evid. 403 [6] is reviewed for an abuse of discretion. *State v. DeMass,* 2000 ME 4, ¶ 11, 743 A.2d 233, 236. In determining whether to exclude relevant evidence, "[i]t is only the danger of *unfair* prejudice that the judge is entitled to weigh against probative value." *State v. Patterson,* 651 A.2d 362, 367

---

6. M.R. Evid. 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair preju-

dice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

(Me.1994) (emphasis in original) (citation omitted). Prejudice, in this context, "is an undue tendency to move the tribunal to decide on an improper basis . . . ." *State v. Hurd,* 360 A.2d 525, 527 n. 5 (Me.1976) (citation and internal quotation marks omitted).

[¶ 29] There is no indication that this testimony pertaining to Pierce's purported mob connections moved the trier of fact to decide the counts on an improper basis. The State presented the testimony to prove Pierce used a false identity when he was around the girls, which was part of the "common scheme or plan" the State presented throughout the trial. Other witnesses testified that Pierce used a false name and age, and the "mob connection" testimony was another incident during which Pierce falsified his identity. In addition, only one witness testified about Pierce's "mob" connection, and the testimony did not indicate that she or the State actually believed that Pierce was connected with the mob.[7] Therefore, we find that the court did not abuse its discretion by allowing the witness to testify about Pierce's statements because the probative value was not substantially outweighed by the danger of unfair prejudice.

The entry is:

Judgment affirmed.

---

7. After she made the statements about Pierce's mob connection, the State asked her: "And, so, he could do this for you?" and she responded: "That's what he claimed."