STATE OF MAINE
AROOSTOOK, ss.

SUPERIOR COURT
DOCKET NO.AROCD-CR-2019-40973

STATE OF MAINE

vs.

ORDER ON DEFENDANT'S
MOTION FOR DISMISSAL

BOBBY NIGHTINGALE
          Defendant

By motion dated October 11, 2022, Defendant has renewed his previously addressed Motion to Dismiss. The renewed motion notes "the only argument here is that the State is blatantly violating the Defendant's constitutional rights, by withholding significant information that very well may shed light on what was heard by Detective Roy." *Renewed Motion to Dismiss at page 2-3.* The motion appears to be entirely related to an email between Detective Roy and the prosecution, which Defendant contends has not been disclosed (that it exists and if so, it has not been turned over).

The court conducted a telephonic conference on the motion on October 14, 2022. Assistant Attorneys General Robbin and Elam represented the State. Attorneys Tebbetts, Randall, and Paradie represented the Defendant. The court notes that subsequent to the filing of the motion, Attorney Paradie conceded that, contrary to the many assertions in the Renewed Motion to Dismiss, Detective Roy did reference an email regarding what he may have heard in the batch of calls provided by the jails in his affidavit that is part of the court record on the original Motion to Dismiss. *Email of Paradie dated 10/14/22 at 2:30 p.m.* Despite this concession, the Defendant contends that this email is of significance and should be turned over to the defense. The Court received the actual email

correspondence chain referenced in the prior affidavit, and discussed by the prosecution during the prior hearing, for *in camera* review.

Not only was the email previously referenced, discussed, and its existence disclosed, nearly the *entire* substance of the email correspondence related to this issue was provided to the court and the defense by way of the affidavits submitted in support of the State's opposition to the Motion to Dismiss and representations by the prosecution at the prior hearing on the Motion to Dismiss. *See, Opposition to Motion for Discovery and/or Dismissal - dated 7/19/22; Affidavit of Elam - dated 7/12/22; Affidavit of Roy - dated 7/18/22.*

Despite an opportunity to call Detective Roy as a witness at the hearing on the Motion to Dismiss on August 4, 2022, the Defendant elected not to do so. There is not even a scintilla of evidence in the record to support the contention that the State has in its possession anything further than what Detective Roy stumbled upon, which was limited to listening briefly to two calls, only for such time as was necessary to ascertain that it *might* have been Defendant's attorney or a member of Defendant's attorney's staff. The court notes that the calls were recorded due to the failure by Mr. Nightingale to designate the attorney numbers as privileged pursuant to the jail regulations previously cited.

Although there is an argument to be made that the correspondence between the lead investigator and the prosecutor fell under the purview of Rule 16(a)(3)[1], the court finds that the previous disclosure of all of the information contained in the emails is such

---

[1] "Exception: Work Product. The attorney for the State is not required to disclose legal research or records, correspondence, reports, or memoranda to the extent that they contain the mental impressions, conclusions, opinions, or legal theories of the attorney for the State or member of his or her legal staff." *M.R.Unif.Crim.P. 16(a)(3).*

that the purpose of the rule is not served by continuing to deny the defense access to the actual emails to put the matter to rest. *See, Opposition to Motion for Discovery and/or Dismissal - dated 7/19/22; Affidavit of Elam - dated 7/12/22; Affidavit of Roy - dated 7/18/22.* The emails shall be made available for review by the Defendant and all counsel of record.

It is abundantly clear to this court that what occurred here is not a discovery violation by the State. After reviewing the record and the actual emails, it is now clear that the inadvertent disclosures were handled in an exemplary manner by the prosecution and by the officer. Further, having viewed the entirety of the trial from start to finish, the court is left with the inescapable conclusion that any development of the facts and circumstances related to this issue during the trial would have *at best* yielded evidence of nominal probative value, even as it relates to impeachment.[2] The probative value of that evidence clearly would have been substantially outweighed by the danger of confusing the jury and waste of time. *M.R.Evid. 403.*

In light of the foregoing, the Defendant's Renewed Motion for Dismissal is hereby **DENIED**.

Date: 11/23/2022

_____
Justice, Maine Superior Court

---

[2] In light of the circumstances and actions by the officer and the State, it is equally or more likely that the evidence would have the opposite effect.

need atty
info

Atty info
undecision

**STATE OF MAINE**
**AROOSTOOK, ss.**

**UNIFIED CRIMINAL DOCKET**
**Docket No. AROCD-CR-19-40973**

STATE OF MAINE,                    )
                                   )
v.                                 )        **ORDER ON MOTION TO SUPPRESS**
                                   )
BOBBY NIGHTINGALE,                 )
            Defendant              )

Defendant has been charged by way of an eight-count indictment with:

1. Burglary of a Dwelling, 17-A M.R.S. § 401(1)(B)(1) & (B)(4) - Class A,

2. Robbery, 17-A M.R.S. §651(1)(D) & (E) - Class A,

3. Possession of a Firearm by a Prohibited Person, 15 M.R.S. §393(1)(A-1)(1) & (A-1)(2) - Class C,

4. Criminal Threatening with a Dangerous Weapon, 17-A M.R.S. §209(1), 1252(4) – Class C,

5. Possession of a Firearm by a Prohibited Person, 15 M.R.S. §393(1)(A-1)(1) & (A-1)(2) - Class C,

6. Possession of a Firearm by a Prohibited Person, 15 M.R.S. §393(1)(A-1)(1) & (A-1)(2) - Class C,

7. Intentional or Knowing Murder, 17-A M.R.S. §201(1)(A), and

8. Intentional or Knowing Murder, 17-A M.R.S. §201(1)(A).

Before the court is Defendant's Motion to Suppress dated November 24, 2020. A hearing on the motion was conducted at the Caribou Superior Court on June 21, 2021. Defendant participated remotely by Zoom with one of his attorneys, Robert Ruffner, Esq.,

participating by Zoom and his other attorney, John Tebbetts, Esq., participating in person. The State was represented by Assistant Attorney General Leanne Robbin and Assistant Attorney General Megan Elam. The court received testimony from Jonathan St. Peter. At the commencement of the hearing, Defendant made clear that by way of his motion, the Defendant's request for suppression was limited to the identification of the Defendant by Jonathan St. Peter.

## BACKGROUND

On the night of August 5, 2019, Jonathan St. Peter (hereinafter "St. Peter") was at his home when he encountered a masked man coming up the stairs to his apartment. The intruder's head and face were partially covered with a balaclava. Approximately a three (3) inch band across the intruder's face around his eyes was visible to St. Peter. The intruder backed St. Peter into his bedroom and the two engaged in a struggle. The struggle lasted for approximately ten (10) minutes. St. Peter and the intruder were "toe to toe" and "chest to chest" during the struggle. The intruder had a firearm. During the struggle, the intruder discharged the firearm. After the firearm was discharged, the intruder hit St. Peter in the head with the firearm and thereafter left the apartment.

St. Peter immediately called 911 and law enforcement officers were dispatched to the apartment. The officers were in St. Peter's home for approximately an hour and interviewed him in his bedroom. St. Peter could not positively identify the intruder at the time of the interview. At some point during the time the officers were in St. Peter's bedroom, one of the officers was speaking to another officer and said that "it sounds like Bobby Nightingale." This was not a statement to St. Peter but it was uttered in St. Peter's

2

presence. The officers never asked St. Peter about "Bobby Nightingale" or referenced "Bobby Nightingale" in any other way.

The day following the encounter and police interview, St. Peter made a few phone calls to unknown third parties. Following those phone calls, St. Peter logged on to Facebook and searched for Bobby Nightingale. Upon viewing the photographs on Facebook, St. Peter positively identified the Defendant as the intruder. St. Peter was "100%" confident that the intruder was the Defendant, "without a doubt."

St. Peter was never shown a photograph of the Defendant or anyone else for identification purposes by law enforcement officers. The officers never suggested in any way that St. Peter search Facebook or any other database to identify the intruder.

## DISCUSSION

When a court is presented with a challenge to the admission of an out-of-court identification under the due process clause, the following two-step test must be met:

> "First, the defendant must prove, by a preponderance of the evidence, that the identification procedure was suggestive. Second, if the court finds that the procedure was suggestive, the State then bears the burden of proving, by clear and convincing evidence, that in the totality of the circumstances the identification, although made under a suggestive procedure, is nevertheless reliable." *State of Maine v. Nigro*, 2011 ME 81, ¶ 21, 24 A.3d 1283 (citations omitted)(quotation marks omitted).

Focusing on the first prong, a defendant can meet his burden by proving by a preponderance of the evidence that the suggestive identification procedure, as precipitated by "improper state conduct", "tended to increase the likelihood of misidentification." *State v. Davis*, 2018 ME 116, ¶ 18, 191 A.3d 1152 (citing *State v. Kelly*, 2000 ME 107, ¶¶19-20, 752 A.2d 188). As noted by the Law Court in *Davis*:

3

"We have explained that "[a]mong the most suspect of all procedures is a confrontation in which a single subject is presented to the witness [by the State] in such a way that the witness knows that the police believe that subject to be the perpetrator of the crime." *True*, 464 A.2d at 950. The danger of such a suggestive identification procedure "is that the witness, eager to cooperate with the police . . . will subtly alter his or her own recollected image of the perpetrator's appearance and other characteristics to match those of the suspect presented." *State v. Davis*, 2018 ME 116, ¶18, 191 A.3d 1147, 1152-1153.

Here, the officers did not show the witness a photograph of the Defendant at *any* time. The officers did not even ask St. Peter about the Defendant and further did not suggest that St. Peter do anything to ascertain the identity of the intruder. The officers did not employ *any* identification procedure. St. Peter took it upon himself to check Facebook to try to identify the intruder. Unlike *Davis*, the photograph in this matter was from a Facebook page, not a booking photograph that shows an individual in police custody. The court finds that the Defendant has failed to show that the officers arranged or otherwise directly influenced the witness's identification in a suggestive way, therefore the court finds he has failed to show "improper state conduct." *Id.* at ¶21(citing *Perry v. New Hampshire*, 565 U.S. 228, 245 (2012).

While there was not improper state conduct, there was conduct by one officer that was suggestive. The statement of one officer to another officer that it "sounds like Bobby Nightingale", clearly reflected that the speaker thought that the Defendant was a good suspect. *See, State v. St. Onge*, 392 A.2d 47, 50 (Me. 1978). Although this statement was not intended to be to St. Peter, St. Peter heard the statement and understood that the particular officer opined that the Defendant might be the suspect. Therefore, the court

4

now proceeds to assess whether the identification of the Defendant is still reliable despite the suggestive nature of the comment that preceded the identification by St. Peter.

Here, St. Peter was locked in combat with an armed intruder to his home for approximately ten (10) minutes. The encounter was dire immediately and the court finds this to be a tremendous amount of time for St. Peter to be struggling "toe to toe" and "chest to chest" with an armed intruder in his home. Even with the intruder's face partially concealed by the balaclava, St. Peter had more than ample time to view the unconcealed portions of the intruder's face, including the three-inch section around the intruder's eyes. The identification was the day after the incident, while it would have remained sharp in St. Peter's mind. His level of confidence in the identification was exceptional. St. Peter is "100%" sure it was the Defendant and he has "no doubt" that the Defendant was the intruder he fought with that night. The court finds by clear and convincing evidence that the State has shown that the reliability of the identification outweighs the corruptive influence of the suggestive comment and is therefore nevertheless reliable. *State v. Nigro,* 2011 ME 81, ¶ 23, 24 A.3d 1283.

## CONCLUSION

Accordingly, based on the above findings of fact and conclusions of law, it is hereby **ORDERED** that Defendant's Motion to Suppress is **DENIED**.

DATED: 6/29/2021

_____
Justice, Maine Superior Court

5

**STATE OF MAINE**
**AROOSTOOK, ss.**

STATE OF MAINE,              )
                            )
v.                          )       ORDER ON MOTION TO SEVER
                            )
BOBBY NIGHTINGALE,          )
        Defendant           )

Defendant has been charged by way of an eight-count indictment with:

1. Burglary of a Dwelling, 17-A M.R.S. § 401(1)(B)(1) & (B)(4) - Class A,

2. Robbery, 17-A M.R.S. §651(1)(D) & (E) - Class A,

3. Possession of a Firearm by a Prohibited Person, 15 M.R.S. §393(1)(A-1)(1) & (A-1)(2) - Class C,

4. Criminal Threatening with a Dangerous Weapon, 17-A M.R.S. §209(1), 1252(4) – Class C,

5. Possession of a Firearm by a Prohibited Person, 15 M.R.S. §393(1)(A-1)(1) & (A-1)(2) - Class C,

6. Possession of a Firearm by a Prohibited Person, 15 M.R.S. §393(1)(A-1)(1) & (A-1)(2) - Class C,

7. Intentional or Knowing Murder, 17-A M.R.S. §201(1)(A), and

8. Intentional or Knowing Murder, 17-A M.R.S. §201(1)(A).

Before the court is Defendant's Motion to Sever dated November 24, 2020. A nontestimonial hearing on the motion was conducted at the Caribou Superior Court on June 21, 2021. Defendant participated remotely by Zoom with one of his attorneys,

Robert Ruffner, Esq., participating by Zoom and his other attorney, John Tebbetts, Esq., participating in person. The State was represented by Assistant Attorney General Leanne Robbin and Assistant Attorney General Megan Elam.

Defendant contends that the counts in the indictment reflect three separate criminal episodes. He therefore seeks separate trials on Counts I, II, and III; Counts IV and V; and VI, VII and VIII. The Defendant concedes that possession of a gun and common witnesses link these three groups of charges, but contends there is a lack of evidence that the gun that was allegedly used in each criminal episode was the same. The State contends that joinder is appropriate as a much of the evidence related to the separate counts would be admissible as to the other counts, due to a significant issue in the case being the identification of the perpetrator.

Maine Rule of Criminal Procedure 8(a) states that "two or more crimes should be charged in the same indictment...in a separate count for each crime if the crimes charged...are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions which are connected or which constitute parts of a common scheme or plan." (Emphasis added). "If the offenses charged are connected in any reasonable manner, they are properly joinable." *State v. Pierce*, 2001 ME 14, ¶13, 770 A.2d 630 (*Citing, State v. Pierce*, 474 A.2d 182, 184 (Me. 1984). To avoid a danger of undue prejudice to the defendant, Rule 8(d) of the Maine Rules of Criminal Procedure provides that a court "may order an election or separate trials of counts...or provide whatever other relief justice requires..."

2

"[J]oinder is the rule rather than the exception; the party moving for severance bears the significant burden of showing that joinder is so prejudicial that it outweighs the benefits associated with joinder—namely, judicial economy and swift resolution of the charges. *See id.* P 23; *State v. Boucher*, 1998 ME 209, P 9, 718 A.2d 1092; *see also United States v. Richardson*, 515 F.3d 74, 81 (1st Cir. 2008) ("Garden variety prejudice . . . will not, in and of itself, warrant severance. The defendant must demonstrate that the prejudicial joinder likely deprived him of a fair trial." (citation omitted)); *United States v. Baltas*, 236 F.3d 27, 33 (1st Cir. 2001) (stating that reversal is only appropriate where the defendant makes a "strong showing of evident prejudice" (citation omitted))." *State v. Olmo*, 2014 ME 138, ¶12, 106 A.3d 396.

In *Olmo* the Law Court identified "three types of prejudice that can result from a joinder of charges…" specifically that "a defendant may become embarrassed or confounded in presenting separate defenses, that proof that defendant is guilty of one offense may be used to convict him of a separate offense, and that a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him/her to choose the unwanted alternative of testifying as to both or testifying as to neither." *Id.*

Regarding the joinder of Counts I, II, and III with Counts VI, VII and VIII, the court finds that the counts are connected in a reasonable manner. The State contends that evidence will be presented at trial to establish that the .45-caliber bullet fired by the intruder in the St. Peter home could have been fired from the same firearm as the bullets retrieved from the Castle Hill murder scene and autopsies, based on the caliber number, rifling and width of the bullets. As the identity of the perpetrator is a central issue in VI,

3

VII, and VIII, much of the evidence related to counts I, II, and III would be admissible as to those counts. *See, State v. Fournier*, 554 A.2d 1184, 1186 (Me. 1989)("Here the murder charged in Count I was committed with the firearm that is the subject of Count III. The two charges thus meet the "connected in any reasonable manner" standard necessary to satisfy the joinder requirements of M.R. Crim. P. 8(a)").

The identification of the Defendant, the ATV, and the sound of that ATV, from the alleged interaction with the Defendant and Mitchell Clark and Tammy Clark related to Counts IV and V are components of the State's theory of the case as to Counts VI, VII, and VIII. Therefore, the counts are also connected in a reasonable manner. The benefits in terms of judicial economy and swift resolution of the charges in leaving the counts joined outweigh any potential prejudice to the Defendant.

Defendant further contends that the joinder infringes upon this Fifth Amendment right to testify in his own defense. In order to prevail on this claim, Defendant '"must make a threshold showing that he has salient testimony to give [concerning] one count and an articulable need to refrain from giving testimony on the other(s).' *Fenton*, 367 F.3d at 22. He is required to give a 'particularized offer of proof [detailing] the testimony that he proposes to give and indicating how it would further his defense," rather than just "bald assertion[s] of innocence.' *Id.; accord, e.g., State v. Lakin*, 2006 ME 64, ¶ 8, 899 A.2d 777 (stating that the party moving for severance bears the burden of showing facts prior to trial to establish that joinder would result in prejudice)." *State v. Lemay*, 2012 ME 86, P29, 46 A.3d 1113, 1121. Defendant has failed to make the necessary threshold showing regarding his testimony and failed to give a "particularized offer of proof."

4

The court also finds that any risk of potential prejudice due to joinder can be addressed by providing an appropriate instruction in that regard. *See* Instruction § 6-3, Alexander, *Maine Jury Instruction Manual* (2018-19).

It is hereby **ORDERED** that **DEFENDANT'S MOTION TO SEVER IS DENIED.**

Date: _6/29/2021_

_____
**Justice, Maine Superior Court**