MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2024 ME 56
Docket:       Oxf-23-113
Argued:       February 8, 2024
Decided:      August 1, 2024

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, and DOUGLAS, JJ.

STATE OF MAINE

v.

MICHAEL T. SMITH

DOUGLAS, J.

[¶1]  Michael T. Smith appeals from a judgment of conviction of twelve counts of unlawful sexual contact entered in the trial court (Oxford County, *Lipez, J.*) after a jury trial.  The charges arose from allegations that Smith sexually abused his stepdaughter between 2011 and 2014 and that he sexually abused his daughter between 2011 and 2019.  On appeal, Smith contends that the trial court abused its discretion by denying his motion for relief from prejudicial joinder and by allowing a forensic interviewer with a background in social work to testify as an expert witness on the phenomenon of delayed disclosure of child sexual abuse.  We affirm the judgment.

## I. BACKGROUND

[¶2]  In September 2019, the Oxford County Sheriff's Office received a report that Smith had sexually abused his seventeen-year-old stepdaughter and his twelve-year-old daughter.  Smith's stepdaughter and daughter were interviewed separately at the Children's Advocacy Center (CAC), but only Smith's stepdaughter disclosed that Smith had sexually abused her.  The following month, Smith was indicted by a grand jury on four counts of unlawful sexual contact involving his stepdaughter.[1]  He pleaded not guilty.

[¶3]  Approximately one year later, the State charged Smith with nine additional counts of unlawful sexual contact based on a report that Smith's daughter made to law enforcement months after the CAC interview.  The State filed a superseding indictment in September 2020.[2]  Counts 1-4 of the indictment alleged that Smith sexually abused his stepdaughter between 2011 and 2014, and Counts 5-13 alleged that he sexually abused his daughter between 2011 and 2019.

---

[1]  Count 1 alleged unlawful sexual contact (Class A) in violation of 17-A M.R.S. § 255-A(1)(F-1) (2024).  Counts 2 and 3 alleged unlawful sexual contact (Class B) in violation of 17-A M.R.S. § 255-A(1)(E-1).  Count 4 alleged unlawful sexual contact (Class B) in violation of 17-A M.R.S. § 255-A(1)(F).

[2]  Each of the nine additional counts alleged unlawful sexual contact (Class B) in violation of 17-A M.R.S. § 255-A(1)(F).

[¶4]  Smith filed a motion for relief from prejudicial joinder pursuant to M.R.U. Crim. P. 8(d).  Smith contended that joinder of Counts 1-4 with Counts 5-13 was unfairly prejudicial because there was "an undeniable risk" that a jury could use a finding of guilt regarding one victim to make a finding of guilt regarding the other victim and that exclusion of such evidence is especially important in cases involving crimes of sexual abuse.

[¶5]  The State objected, arguing that Smith's conduct was evidence of intent and evinced a recurring modus operandi or a common scheme or plan, given that the victims alleged the same type of abuse, in the same location, when the same opportunity arose, during the same timeframe, and when the victims were at similar stages of development and shared a similar relationship with Smith.  The State additionally argued that "the[] instances of abuse are so inextricably intertwined that holding separate trials pertaining to each victim—and excluding all evidence of the defendant's abuse against the other— would be near impossible."  The State alleged that Smith abused both victims at the same time on at least one occasion; Smith's stepdaughter disclosed her own abuse after witnessing Smith abusing his daughter; and Smith's stepdaughter is the person to whom Smith's daughter made her first report.  The State

4

asserted that a limiting instruction was the proper remedy to address Smith's concerns.

[¶6]  By a written order entered August 16, 2022, the trial court denied Smith's motion.  The court found that the charges were properly joined under M.R.U. Crim. P. 8(a) where the alleged conduct was connected in "time, purpose, and modus operandi."  The court observed that the greatest risk of potential prejudice arose from the allegation that Smith had abused more than one victim, which could lead the jury to infer a propensity to commit the crimes. The court concluded, however, that although the evidence of ongoing abuse of two victims added some weight to the prejudice side of the scale, it did not tip the balance in favor of separate trials.  Relying on the State's allegation that Smith abused both victims at the same time, the court found that joinder did not result in unfair prejudice because "even if it ordered separate trials, evidence of the abuse of [Smith's daughter] would be admissible in a trial regarding the abuse of [Smith's stepdaughter], and vice versa."  The court found that evidence of the joint assault was dispositive on the severance issue, but it further found that other evidence would be admissible at both trials, including evidence of the stepdaughter's motive for disclosing her own abuse as well as

evidence of ongoing abuse of the victims, which could be used to prove that Smith employed a recurring modus operandi or had a common scheme or plan.

[¶7]  Before trial, the State indicated that it intended to call an expert witness, Kathy Harvey-Brown, to opine on the forensic interview process and the phenomenon of children delaying disclosure of sexual abuse.  Smith filed a motion in limine seeking to exclude Harvey-Brown's testimony.  The court held a hearing at which the parties conducted a voir dire examination of Harvey-Brown.

[¶8]  Regarding her qualifications, Harvey-Brown testified that she is a licensed clinical social worker and has a master's degree in social work.  She testified that she has been trained, and holds multiple certifications, in forensic interviewing and that she has conducted thousands of interviews. Harvey-Brown further testified that she has presented many trainings on sexual abuse and effective interview and investigation strategies. Harvey-Brown estimated that she had testified in court on more than one hundred occasions, including as an expert, most recently in the spring of 2022. Harvey-Brown testified that although she has not published any articles in a peer-reviewed journal, she has participated in a regular peer-review process for forensic interviewers, which is required for CAC accreditation.

6

[¶9]  Harvey-Brown testified that she is familiar with the research on children's delayed disclosure of sexual abuse and that her expert opinion is based on that research.  Harvey-Brown defined "delayed disclosure" as a disclosure that does not occur immediately after a sexual abuse episode.  She explained that the research shows it is "quite normative" for child victims of sexual abuse to not disclose the abuse immediately and that there could be many reasons for the delay, including the victim's age, whether there is a believing caregiver, whether the abuser is a family member, any feelings of shame, an insufficient understanding of the significance of the conduct involved, and other psychosocial factors.  Harvey-Brown testified that it is not uncommon for a child to make only a partial disclosure to test the reaction of the person to whom the child is disclosing, and that, given the nature of memory recall in children generally and based on a particular child's readiness, full disclosure is often a process that is slow to unfold.[3]

[¶10]  The trial court denied Smith's motion.  The court determined that Harvey-Brown was qualified to testify about the "general consensus in the field about when or how children do make disclosures of child sexual abuse."  The

---

[3] Harvey-Brown further testified that she neither conducted the interviews of the alleged victims nor reviewed any materials related to the case.  She was made aware only that a CAC interview had been conducted and that one of the alleged victims denied in that interview that she had been abused but later disclosed the abuse to law enforcement.

court found that Harvey-Brown was familiar with current research and relied upon it in her own work.  The court added that Harvey-Brown was a licensed clinical social worker with a master's degree in social work and that she had worked in the field for over a decade, conducting more than one thousand interviews.[4]

[¶11]  A two-day jury trial was held on January 9 and 10, 2023.  The evidence consisted primarily of the testimony of Smith's stepdaughter, Smith's daughter, and Harvey-Brown.  After the State rested, Smith moved for a judgment of acquittal as to some counts of the indictment.  The court granted the motion with respect to Count 13 because the trial testimony did not match the date of the offense charged in that count but otherwise denied the motion. The jury returned a verdict of guilty on all remaining counts.

[¶12]  The court entered a judgment on the jury's verdict and sentenced Smith to twelve years of imprisonment, with all but six years suspended, followed by four years of probation on Count 1.  On Counts 2 through 12, the court sentenced Smith to ten years of imprisonment, with all but five years suspended, and three years of probation, to be served concurrently with Count 1.  Smith timely appealed.

---

[4] Smith's motion in limine sought to exclude Harvey-Brown's testimony on other grounds, which the trial court also rejected, and which have not been raised on appeal.

## II. DISCUSSION

## A.    Joinder of Crimes

[¶13] Smith contends that the trial court abused its discretion by denying his motion to sever Counts 1-4—the charges alleging that he sexually abused his stepdaughter—from Counts 5-13—the charges alleging that he sexually abused his daughter.  Smith argues that the trial court should have determined that the joinder of multiple sexual abuse charges involving both victims would likely have a prejudicially bolstering effect such that a jury, even if properly instructed, would be "unable to evaluate the evidence pertaining to each distinct count separately," might consider proof of guilt relating to one victim as probative of his guilt as to the other victim, and overall would likely conclude that "he had a propensity to commit crime generally and sexual abuse crimes specifically, not relying on the actual facts but [on] the amount of 'facts.'"

[¶14]   The joinder of multiple offenses in a single indictment is authorized by Maine Rule of Unified Criminal Procedure 8(a).  Rule 8(a) provides:

> **(a)  Joinder of Crimes.**  Two or more crimes *should* be charged in the same indictment, information, or complaint in a separate count for each crime if the crimes charged, whether of the same class or different classes, are of the same or similar character or are based on the same act or transaction or on two or more acts

> or transactions that are connected or that constitute parts of a common scheme or plan.

(Emphasis added.) "[J]oint trials are favored in the interest of conserving judicial economy, avoiding duplicitous, time-consuming and expensive trials, conserving public funds, diminishing inconvenience to witnesses and public authorities, and promptly trying those accused of crime." *State v. Rich*, 395 A.2d 1123, 1128 (Me. 1978) (quotation marks omitted). Thus, if criminal offenses are connected in any reasonable manner, they are "properly joinable." *State v. Olmo*, 2014 ME 138, ¶ 11, 106 A.3d 396 (quotation marks omitted); *see also State v. Lemay*, 2012 ME 86, ¶¶ 18-21, 46 A.3d 1113 (interpreting the rule of joinder broadly). In this case, the charges were properly joined.

[¶15] Even where joinder may otherwise be proper, Maine Rule of Unified Criminal Procedure 8(d)[5] authorizes a trial court to order separate trials if it appears a defendant would suffer undue prejudice. *Olmo*, 2014 ME 138, ¶ 12, 106 A.3d 396. To ensure that a defendant does not suffer undue prejudice, we construe Rule 8(d) liberally. *Lemay*, 2012 ME 86, ¶ 22, 46 A.3d

---

[5] Maine Rule of Unified Criminal Procedure 8(d) provides:

> **(d) Relief From Prejudicial Joinder.** If it appears that a defendant or the State is prejudiced by a joinder of offenses against a single defendant or by the joinder of defendants, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires, including ordering multiple simultaneous trials.

1113; *see also State v. Pierce*, 2001 ME 14, ¶ 20, 770 A.2d 630. "Nonetheless, joinder is the rule rather than the exception; the party moving for severance bears the significant burden of showing that joinder is so prejudicial that it outweighs the benefits associated with joinder . . . ." *Olmo*, 2014 ME 138, ¶ 12, 106 A.3d 396.

[¶16] In considering a defendant's motion for relief from joinder, the trial court has "wide discretion" in balancing the policy favoring joinder of offenses against the potential prejudice to the defendant. *Pierce*, 2001 ME 14, ¶ 12, 770 A.2d 630 (quotation marks omitted); *see also State v. Fournier*, 554 A.2d 1184, 1186-87 (Me. 1989); *State v. Parsons*, 2005 ME 69, ¶ 13, 874 A.2d 875. We will uphold a trial court's denial of such a motion "unless the case is one in which the potential for confusion or prejudice is obviously serious." *Pierce*, 2001 ME 14, ¶ 12, 770 A.2d 630 (quotation marks omitted); *see also United States v. Richardson*, 515 F.3d 74, 81 (1st Cir. 2008) ("Garden variety prejudice, however, will not, in and of itself, warrant severance. The defendant must demonstrate that the prejudicial joinder likely deprived him of a fair trial." (citation omitted)); *United States v. Baltas*, 236 F.3d 27, 33 (1st Cir. 2001) (stating that reversal is appropriate only where the defendant makes a "strong showing of evident prejudice" (quotation marks omitted)).

[¶17] The trial court did not abuse its discretion in denying Smith's request for separate trials, for several reasons. First, contrary to Smith's contentions, the nature and the number of the charges involved in this case do not amount to a "strong showing of evident prejudice" warranting severance. *Baltas*, 236 F.3d at 33 (quotation marks omitted); *see, e.g.*, *Parsons*, 2005 ME 69, ¶¶ 1, 12-14, 874 A.2d 875 (affirming a trial court's denial of a motion to sever a charge of possession of sexually explicit materials from four charges of sexual abuse of a child); *Pierce*, 2001 ME 14, ¶¶ 1 n.1, 11-20, 770 A.2d 630 (upholding a trial court's denial of a motion to sever charges in a multicount indictment alleging sexual abuse of different victims); *State v. Lakin*, 536 A.2d 1124, 1125-27 (Me. 1988) (concluding that a trial court properly denied a motion seeking separate trials on allegations of rape against one victim and attempted rape against a different victim).

[¶18] "Some risk of confusion of the factfinder may be present in any case where somewhat similar offenses are prosecuted in one proceeding." *State v. Doody*, 434 A.2d 523, 527 (Me. 1981). Except in an "egregious" case where the potential for jury confusion is obvious, however, we have "recognized that typically it is not apparent from the nature of the crimes charged or the state of the pleadings that a jury, despite proper instruction, will be unable to treat the

evidence relevant to each crime separately and distinctly." *State v. Brown*, 1998 ME 129, ¶ 7, 712 A.2d 513 (alteration and quotation marks omitted); *see also Lemay,* 2012 ME 86, ¶ 24, 46 A.3d 1113 ("[T]he sheer number of charges or the possibility of juror confusion is not inherently prejudicial."). The allegations here, while serious and numerous, did not demand severance.

[¶19] Second, the risk of prejudice was not necessarily enhanced by the joinder because, even if Counts 1-4 and Counts 5-13 had been severed, evidence of the abuse of each victim would have been admissible in both trials. *See Brown*, 1998 ME 129, ¶ 9, 712 A.2d 513. "The linchpin of the prejudice analysis is whether joinder would lead to the admission of evidence that would be inadmissible in separate trials." *Lemay*, 2012 ME 86, ¶ 26, 46 A.3d 1113; *see also Pierce,* 2001 ME 14, ¶ 18, 770 A.2d 630; *State v. Pierce*, 474 A.2d 182, 184-85 (Me. 1984); *United States v. Fenton*, 367 F.3d 14, 22 (1st Cir. 2004). Maine Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove a person's character to show that on a particular occasion the person acted in conformity therewith. Rule 404(b) does not require the exclusion of such evidence, however, "when offered for another purpose, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident." Advisers' Note to former M.R. Evid. 404 (Feb. 2, 1976).

[¶20] Here, evidence of the joint assault would have been admissible at each trial if Smith's motion had been granted.[6] Furthermore, as found by the trial court, the charges alleging abuse against Smith's stepdaughter and the charges alleging abuse against Smith's daughter were connected in ways that suggested Smith's conduct was committed pursuant to a recurring modus operandi, and the evidence was probative of a common scheme or plan.

[¶21] Finally, the court mitigated the potential for confusion or prejudice by giving clear instructions to the jury. *See Lemay*, 2012 ME 86, ¶ 24, 46 A.3d 1113; *Brown*, 1998 ME 129, ¶ 10 n.8, 712 A.2d 513. The court instructed:

> In this case, the State has charged the defendant, Michael Smith, with having committed more than one offense. You must

---

[6] Smith also argues that the State "oversold" the joint assault allegation and that, as the trial unfolded, the denial of the motion for relief from joinder proved more prejudicial than expected because Smith's daughter did not offer testimony about a joint assault. Because Smith raises this argument for the first time in his reply brief, the argument is waived. *See Lincoln v. Burbank*, 2016 ME 138, ¶ 41, 147 A.3d 1165. Nevertheless, we make two observations. First, if Smith "believed that prejudice from the joinder of offenses arose during the course of his trial and that such prejudice could not be cured through appropriate instructions, his remedy was to move for a mistrial, particularizing his grounds therefor." *State v. Bradley*, 414 A.2d 1236, 1239-40 (Me. 1980) (stating that a trial court has no continuing duty after denying a motion to sever multiple offenses charged against a single defendant); *see also State v. Pierce*, 2001 ME 14, ¶¶ 21-22, 770 A.2d 630; *State v. Pierce*, 474 A.2d 182, 185 (Me. 1984). Second, Smith takes an overly narrow view of his daughter's testimony. Drawing all reasonable inferences from the testimony, as the jury was permitted to do, Smith's daughter's testimony supports the allegation of a joint assault. Furthermore, Smith's stepdaughter unequivocally testified that there were occasions on which Smith abused her and Smith's daughter at the same time. Thus, there is no evidence in the record that "a serious risk of juror confusion or prejudice may have developed during the trial." *State v. Brown*, 1998 ME 129, ¶ 10, 712 A.2d 513.

14

not infer guilt because of the number of charges. You must consider each charge separately and independently of the other charges. You must make a separate decision as to each charge as to whether the State has proven each charge beyond a reasonable doubt. You may find that the defendant is guilty of all charges; that he is not guilty of all charges; that he is guilty of one or more of them, but not guilty of one or more of the others. The point is that each charge must be considered by itself, and you must reach a unanimous verdict on each charge, independent of the verdicts that you may reach on other charges.

The court also instructed the jury to "[c]arefully consider all the testimony, the circumstances under which each witness testified, and everything tending to show whether that witness should be believed or not." Thus, the trial court provided clear instructions to the jury that it was prohibited from inferring guilt based on the number of charges, that it must consider each charge separately, and that it was entitled to believe or disbelieve the testimony offered by each witness. *See State v. Hunt*, 2023 ME 26, ¶ 30, 293 A.3d 423 ("A jury is presumed to follow the court's instructions.").

[¶22] Smith has failed to make a sufficient showing that the joinder of charges here presented a serious risk of prejudice.

**B.    Expert Testimony**

[¶23]   Smith next argues that the trial court abused its discretion by allowing Harvey-Brown to testify as an expert witness on the phenomenon of delayed disclosure of sexual abuse. Smith's principal contention is that Harvey-

Brown did not have the requisite qualifications because her education was limited to a master's degree in social work and her experience as a forensic interviewer did not beget knowledge of the principles underlying the phenomenon.[7]

[¶24]  When a party proposes to offer expert testimony, the trial court must determine as a preliminary matter "whether the witness is qualified to give the opinion sought."  *State v. Boutilier*, 426 A.2d 876, 878 (Me. 1981); *see also* M.R. Evid. 104(a).  Maine Rule of Evidence 702 governs the standard for admissibility of an expert opinion:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if such testimony will help the trier of fact to understand the evidence or to determine a fact in issue.

Rule 702 does not require that an expert witness possess each attribute stated in the rule.  *See* Sigmund D. Schutz, *Expert Witness Opinion Testimony: Admission*

---

[7] Smith further contends that the trial court committed obvious error by allowing Harvey-Brown to testify about memory encoding, which, Smith alleges, was a subject that she had not been deemed qualified to address.  It is not clear from the record, however, that Harvey-Brown's testimony exceeded the scope of the court's preliminary ruling.  In any event, we discern no error, much less an obvious one.  *See State v. Harper*, 675 A.2d 495, 497 (Me. 1996) ("Obvious error is error so highly prejudicial that it taints the proceedings and virtually deprives the defendant of a fair trial.").

Also, in his brief, Smith argued that it was error to admit Harvey-Brown's expert testimony on forensic interviewing protocols.  At oral argument, however, Smith conceded that Harvey-Brown was sufficiently qualified as to this aspect of her testimony.  We therefore consider the argument waived.

16

*and Exclusion in Maine, in A Practical Guide to Evidence in Maine* § 12.4.1 at 12-6 (Bryant & Nivison eds., 2015 & Supp. 2022) (stating that the use of the term "or" means that an expert may be qualified based on "all or any of these factors"). Nor does Rule 702 require that a witness offering expert testimony have "optimal qualifications." *United States v. Vargas*, 471 F.3d 255, 262 (1st Cir. 2006). "As long as the expert is qualified, the extent of the qualifications goes to the weight of the expert's testimony." *State v. Cookson*, 2003 ME 136, ¶ 22, 837 A.2d 101. We review a trial court's determination of the qualifications of an expert for an abuse of discretion. *Id.* ¶ 20.

[¶25] The record reflects that the trial court carefully evaluated Harvey-Brown's qualifications following a thorough voir dire. The trial court found, with support in the record, that Harvey-Brown was familiar with the research on the phenomenon of delayed disclosure, stayed current with the research, and relied on that research in her work as a licensed clinical social worker and a forensic interviewer. The trial court further considered Harvey-Brown's extensive training, education, and experience to determine that Harvey-Brown was qualified to opine on the subject. That determination was well within the bounds of the trial court's discretion.

[¶26]  Smith's contention that Harvey-Brown was unqualified "to explain the theory of delayed disclosure" because she lacks a doctoral degree in a cognitive science is unpersuasive in two respects.

[¶27]  First, Rule 702 does not require, as Smith suggests, that an expert witness have attained a particular educational degree or have practiced in a particular profession.  As noted, a witness may be qualified to testify as an expert on the basis of one or a combination of the attributes listed in Rule 702: "knowledge, skill, experience, training, *or* education."   (Emphasis added.) *See also United States v. Monteiro*, 407 F. Supp. 2d 351, 373 (D. Mass. 2006) ("[E]ducation is not the sine qua non of qualification of an expert witness."). Harvey-Brown's master's degree in social work and her training and experience in conducting forensic interviews of children reporting sexual abuse were sufficient grounds on which the court could, and did, rely.  *See* John E. B. Myers et al., *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb. L. Rev. 1, 11 & n.24 (1989) (stating that "[e]xperts on child sexual abuse are drawn predominantly from the professions of psychology, medicine, psychiatry, and social work" and that when "determining who is qualified to testify as an expert on child sexual abuse, it is important to emphasize that simply because a person

holds a particular degree does not mean the person is qualified to testify as an expert").

[¶28]   Second, Harvey-Brown's opinion was limited in scope.  She explained to the jury that it is not uncommon for a child who has been sexually abused to delay reporting the abuse and that a number of psychosocial factors may contribute to the delay.  Her expert opinion did not stray outside her area of expertise nor did it require additional specialized knowledge.

[¶29]   We conclude that the determination that Harvey-Brown was qualified to testify as an expert on the phenomenon of delayed disclosure was well within the trial court's discretion.[8]

The entry is:

Judgment affirmed.

---

[8] On appeal, Smith attempts to argue that the trial court's rulings on joinder and expert testimony not only contravened the rules but also violated due process.  For example, Smith asserts for the first time in his reply brief that, when offenses have been joined for trial, the question of whether a defendant can receive a fair trial "is not limited to the rules and case law," referencing the United States and Maine Constitutions.  Further, in rebuttal at oral argument, Smith framed the trial court's ruling on the admissibility of the expert testimony in terms of a due process deprivation of his right to a fair trial.  Because he neither raised these arguments expressly to the trial court nor timely raised or properly developed them on appeal, we give them no further consideration beyond our disposition of the individual issues above.  *See Est. of Giguere*, 2024 ME 41, ¶ 23 n.5, 315 A.3d 737.

Daniel D. Feldman, Esq. (orally), Law Office of Daniel Feldman, LLC, Yarmouth, for appellant Michael T. Smith

Neil E. McLean, Jr., District Attorney, and Richard R. Beauchesne, Asst. Dist. Atty. (orally), Office of the District Attorney, South Paris, for appellee State of Maine

Oxford County Unified Criminal Docket docket number CR-2019-499
FOR CLERK REFERENCE ONLY